

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SANDRA KAY KNOTTS,<br>　　PLAINTIFF, | § § § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-692-A |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　DEFENDANT. | § § § § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I.   STATEMENT OF THE CASE

*Pro-se* plaintiff Sandra Kay Knotts ("Knotts") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In October 2011, Knotts protectively applied for DIB, claiming that she had been unable to work since June 3, 2011. (Transcript ("Tr.") 11, 126-27.) Her applications were denied initially and on reconsideration, and Knotts requested a hearing before an administrative law judge ("ALJ"). (Tr. 11, 75-79, 82-88.) An ALJ

1

held a hearing on February 12, 2013 and issued a decision on May 3, 2013 that Knotts was not disabled. (Tr. 8-25, 28-71.) Knotts filed a written request for review of the ALJ's decision, and the Appeals Council denied the request on June 27, 2014, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-4, 7.)

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent

the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III.   ISSUES

While far from clear in her brief, it appears that Knotts presents the following issues:

(1) Whether the ALJ erred in failing to find that she did not have an impairment or combination of impairments that met sections 9.02 through 9.08 of the Listing, which were removed from the Listing effective June 7, 2011 after her onset date of June 3, 2011;

(2) Whether the ALJ's RFC determination is supported by substantial evidence;

(3) Whether the ALJ erred in failing to give more weight to her age in relation to the transferability of her job skills; and

(4) Whether the new evidence submitted to the Court requires the Court to remand the case to the ALJ.

(Plaintiff's Brief ("Pl.'s Br.") at 2-3, 5-7.)

### IV.   ALJ DECISION

In his May 3, 2013 decision, the ALJ found that Knotts remained insured through December 31, 2015 and had not engaged in any substantial gainful activity since June 3, 2011, her alleged onset date. (Tr. 12.) The ALJ further found that Knotts had the following severe combination of impairments: "degenerative disc disease of the cervical spine, status-post fusion surgery at C3-4 through C5-6 of the cervical spine, paresthesias of the bilateral hands, obesity, peripheral neuropathy, and a history of knee surgery." (Tr. 12.) Next, the ALJ held that none of Knotts' impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. at 12-13.) The ALJ specifically considered sections 1.02, 1.04, and 11.14 of the Listing. In addition, the ALJ stated:

> Effective June 7, 2011, sections 9.02 through 9.08 of the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, dealing with endocrine impairments including diabetes, thyroid disorders, and adrenal gland

> disorders, were removed from the Listing of Impairments (*See* Federal Register, vol. 76, pgs. 19692-19698). Because Ms. Knotts' case is being adjudicated after June 7, 2011, those prior sections of the listings are no longer applicable.

(Tr. 13.)

As to Knotts' residual functional capacity ("RFC"), the ALJ stated:

> Ms. Knotts retains the residual functional capacity to perform light work with the following restrictions and abilities: Lift and carry 20 pounds occasionally and 10 pounds frequently; sit 6 hours in an 8-hour workday; stand and walk 6 hours in an 8-hour workday; no climbing ladders, scaffolds, or ropes; only occasional stooping, kneeling, crouching, and crawling; only occasional overhead reaching with the bilateral upper extremities; frequent, but not constant, handling with the bilateral upper extremities; only occasional fingering with the bilateral upper extremities; and no work around excessive vibrations. Ms. Knotts is able to work full-time with this residual functional capacity on a sustained basis and maintain employment. . . .

(Tr. 14 (emphasis omitted).) Next, the ALJ found that Knotts was unable to perform her past relevant work. (Tr. 19.) However, at the fifth step, the ALJ found that jobs existed in significant numbers in the national economy that Knotts could perform. (Tr. 19-20.) Based on this determination, the ALJ concluded that Knotts was not disabled. (Tr. 20.)

## V.   DISCUSSION

### A.   Listing of Impairments

In her brief, Knotts argues that the ALJ should have found that she met sections 9.02 through 9.08 of the Listing, specifically the section of the Listing as to her diabetes, because her onset date was June 3, 2011 and such sections were not removed from the Listing until June 7, 2011. (Pl.'s Br. at 5-6.) As noted by the ALJ in his decision, sections 9.02 through 9.08 of the Listing were removed, effective June 7, 2011. (Tr. 13.) According to 76 Federal Register 19,692, the new rules, which became effective on June 7, 2011, would, *inter alia*, be applied to

5

claims that are *pending on and after* the effective date. 76 Fed. Reg. 19,692 (April 8, 2011) (removing §§ 9.01-08). In addition, the Federal Register states, "This means that we will use these final rules on and after their effective date in any case in which we make a determination or decision." *Id.* at 19,698 n.3.

On June 7, 2011, the date the rules became effective, Knotts had not even filed her claim for DIB. In fact, Knotts did not file her claim until October 2011, several months *after* the date the new Listing rules became effective, and the ALJ did not make a decision on Knott's claim until May 3, 2013, almost two years after the new rules had become effective. Consequently, at the time Knotts filed her claim in October 2011, sections 9.02 through 9.08 had already been removed from the Listing and are not applicable to Knotts' claim, regardless of her onset of disability date. Thus, the ALJ did not err in failing to consider whether Knotts met or equaled the old section any of the removed sections of the Listing.

B.   RFC Determination

The next issue is whether the ALJ's RFC determination is supported by substantial evidence. Knotts argues, in essence, that she maintains a RFC of less than sedentary and "therefore cannot perform the full range of duties that constituted her past work." (Pl.'s Br. at 6.) However, the ALJ concluded that Knotts could not perform her past relevant work and so did not err in this regard. (Tr. 19.)

Moreover, Knotts argues that the RFC determination is in error because the ALJ should have given more weight to "her nonexertional impairments (inability to grasp objects or perform fingering tasks) due to numbness in her hands." (Pl.'s Br. at 6.) In support of her argument,

Knotts references two exhibits that she attached to her brief that she submitted to the Court. The first is a Functional Capacity Evaluation Summary Report dated July 7, 2014 in which Brenda Davis, OT ("Davis"), opined, *inter alia*, that Knotts' "physical demand category" is "less than sedentary" and her ability to reach in all directions and grasp with both hands was "limited." (Pl.'s Br. at Exhibit ("Ex.") A2.) The second is a Physical Capacities Assessment dated September 8, 2014 in which Richard Espey, M.D. ("Dr. Espey"), opined, *inter alia*, that Knotts could never handle or finger objects. (Pl.'s Br. at Ex. A3.)

RFC is what an individual can still do despite her limitations.[1] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do, but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at *3–5. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

7

sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

As stated above, the ALJ found that Knotts had a severe combination of impairments that included paresthesias of the bilateral hands and peripheral neuropathy. (Tr. 12.) In addition, the ALJ limited Knotts to an RFC to perform, in essence, light work[3] with several additional

---

[3] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

8

limitations including: (1) only occasional overhead reaching with the bilateral upper extremities; (2) frequent, but not constant, handling with the bilateral upper extremities; and (3) only occasional fingering with the bilateral upper extremities. (Tr. 14.) In making such a determination, the ALJ considered, *inter alia*, the following evidence in the record: (1) Knott's testimony (Tr. 14-15); (2) an August 1, 2011 examination in which Joe Ellis Wheeler, M.D. ("Dr. Wheeler"), Knotts' neurosurgeon, indicated that "she had a strong grip and no weakness with dorsiflexion or plantar flexion of her hands," feet, or toes, although there was decreased sensation in the fingers of the bilateral hands (Tr. 15; *see* Tr. 17, 222, 225); (3) an examination the day after Knott's September 15, 2011 neck surgery in which Dr. Wheeler indicated that her "overall condition improved, including of her hands and upper extremities;" (Tr. 15; *see* Tr. 17, 260, 264); (4) an Attending Physicians Statement dated October 6, 2011 in which Dr. Wheeler opined that Knotts could not perform her prior job at that time but the was expected to make fundamental or marked improvement in three to six months (Tr. 17, 216); (5) an October 28, 2011 examination in which Dr. Wheeler indicated, *inter alia*, her reflexes and sensation were intact, she had good strength in her upper extremities, and she was released to ride in an airplane and car and to drive (Tr. 15, 17; *see* Tr. 219, 246); (6) a January 14, 2012 consultative examination in which Wendell Jones, M.D. ("Dr. Jones"), *inter alia*, indicated: (a) Knotts' fine

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). In addition, SSR 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

and dexterous finger control was intact, (b) Knotts' strength in her left upper extremity was slightly decreased (4/5) but otherwise normal (5/5) in all other areas including her right upper extremity, bilateral grip strength, and bilateral lower extremities, and (c) Knotts had decreased pinprick sensation in her feet (Tr. 15, 17, 227-34); (7) a January 16, 2012 examination in which Dr. Wheeler noted that Knotts had fine motor coordination even though she complained of tingling in her fingers and left arm and difficulty when looking left (Tr. 15, 18, 245); (8) an April 16, 2012 examination in which Dr. Wheeler: (a) reported that the sensation in Knotts' hands was intact and that Knotts was able to squeeze hard with both hands and (b) noted that Knotts reported the numbness in the palm of her hands was gone and her hands were getting better (Tr. 15-16, 18, 244); (9) a July 31, 2012 examination in which Dr. Wheeler indicated that, while her finger might be swollen from non-use, Knotts' reflexes were normal and her sensation to light touch was intact (Tr. 16, 18, 257); (10) examination notes from November 20, 2012 indicating that Knotts had driven to the exam that day and she had good motion and sensation in her hands and fingers (Tr. 16, 18, 270, 274); (11) examination notes dated July 31, 2012, November 20, 2012, and February 12, 2013 in which H. Burney, M.D., Knotts' primary care physician, indicated that Knotts was normal in all areas (Tr. 18, 255, 268-69); (11) a Physical Residual Functional Capacity Assessment ("PRFCA") dated January 31, 2012 in which State Agency Medical Consultant James Wright, M.D. ("SAMC Wright") opined that Knotts: (a) could lift and/or carry up to twenty pounds occasionally and up to ten pounds frequently, (b) could sit, stand, and/or walk about six hours in an eight-hour workday, (c) had the unlimited ability to push and/or pull, (d) could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and

crawl and never climb ladders, ropes or scaffolds, (e) was limited in reaching all directions (including overhead) but had the unlimited ability to handle, finger, and feel, and (f) should avoid concentrated exposure to vibration (Tr. 18, 235-42); and (12) a Case Assessment Form dated May 10, 2012 in which SAMC Laurence Ligon, M.D. ("SAMC Ligon") affirmed SAMC Wright's January 31, 2012 PRFCA (Tr. 18-19, 254).

Based on the foregoing, it is clear that the ALJ clearly considered the impairments relating to Knotts' hands and incorporated limitations for such impairments in the RFC determination. The ALJ discussed (1) the evidence in the record in making his RFC determination, (2) adequately explained the reasoning for such determination and for giving less weight to certain evidence, and (3) exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

As to the Functional Capacity Evaluation Summary Report and the Physical Capacities Assessment that Knotts submitted to the Court with her brief, the Court notes that "[w]hen new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42 U.S.C. § 405(g) and *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but is to determine whether to remand for the consideration of the newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th

Cir. 1989). "To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, the evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

In the Functional Capacity Evaluation Summary Report, Davis, an occupational therapist, opined that Knotts' ability to reach in all directions and grasp with both hands was "limited." (Pl.'s Br. at Ex. A2.) However, an occupational therapist is not an acceptable medical source. *See, e.g., Forest v. Astrue*, No. 11-2017, 2012 WL 3137844, at *11 (E.D. La. Aug. 1, 2012) ("[A] physical therapist is *not* an acceptable medical source to 'provide evidence to *establish* an impairment.'") "Acceptable medical sources" refer to licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists, who may address matters within their area of training. *See generally* 20 C.F.R. § 404.1513(a). The distinction between "acceptable medical sources" and other healthcare providers is important because only acceptable medical sources can establish the existence of a medically determinable impairment, offer a medical opinion, or be a qualified treating source whose medical opinion may be entitled to controlling weight. SSR 06–03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). While the information from Davis may be used to provide insight into the severity of an impairment and

how it affects the individual's ability to function (*id.*), the Court finds that the evidence relating to Knott's limited ability to reach in all directions is cumulative of the other evidence in the record and, thus, is not new. For example, SAMC Wright's opinion in the PRFCA, which the ALJ gave "considerable weight," specifically found that Knotts was limited in her ability to reach in all directions, just as found by Davis. (Tr. 18, 238.) As to Davis' finding that Knotts' ability to grasp with both hands was limited as well as the Physical Capacities Assessment dated September 8, 2014 in which Dr. Espy opined that Knotts could never handle or finger objects, such evidence is not material as there is not, based upon all the other conflicting evidence in the record, a reasonable probability that this evidence would change the outcome of the ALJ's decision. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Consequently, remand is not required.

### C. Age and Transferability of Job Skills

Knotts also argues that the ALJ erred in failing to give more weight to her age in considering the transferability of her job skills. (Pl.'s Br. at 6-7.) Specifically, Knotts states:

> She was approaching advanced age (50-54) at the onset of her disability and will be of advanced age in approximately 7 months. Section 201.00(g) of 20 C.F.R[.], Part 404, Subpart P, Appendix 2, states, "Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work

experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily applies.

(Pl.'s Br. at 6-7.) In this case, however, the ALJ found that Knotts was limited to light work with additional restrictions, not sedentary work. As noted above, the ALJ's RFC determination was supported by substantial evidence. Thus, section 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g) is not applicable to Knotts' case and her argument fails.

### D. New Evidence Submitted to the Court

Knotts also argues that the case should be remanded because of new evidence that she presented to the Court. Knotts attached three exhibits to the brief that she submitted to the Court. Two of these exhibits have already been considered hereinabove by the Court. The third exhibit is a letter from Dearborn National Life Insurance Company ("Dearborn National"), which is apparently a Long-Term Disability carrier for Knotts' former employer. (Pl.'s Br. at Ex. A1.) In the letter, which is dated September 26, 2014, Dearborn National, *inter alia*, states:

> We have completed our review of your request for reconsideration of your claim for [Long-Term Disability] benefits. Based upon our review of your file, we have determined that you are currently experiencing an impact to your functional capacity due to Neuropathy secondary to diabetes. Therefore, your claim will be opened and benefits will be paid retroactive from March 1, 2014, the last day benefits were paid to.

(*Id.*)

As set forth above, "[w]hen new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley*, 67 F.3d at 555. In this case, the letter from Dearborn National is not legally binding on the

Commissioner because such decision was not made based on social security law. *See* SSR 06-03p, 2006 WL 2329939, at *6.[4] *See, e.g., Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citing *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) ("A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different . . . ."). While the letter is not legally binding, the Court still has an obligation to consider such letter. *See* SSR 06-03p, 2006 WL 2329939, at *6. After considering such letter, the Court concludes there is not a reasonable probability that the letter would change the outcome of the Commissioner's decision as the ALJ had specifically considered Knotts' impairments of peripheral neuropathy as well as her diabetes and ultimately found that such impairments, in combination with her other impairments, were not disabling pursuant to the SSA. (*See, e.g.*, Tr. 13-20.) Thus, remand is not required.

---

[4] The relevant portion of SSR 06-03p states:

> The regulations at 20 CFR 404.1504 and 416.904 provide that:
>
> [a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us.
>
> . . . .
>
> . . . . [W]e are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies. . . . Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."

SSR 06-03p, 2006 WL 2329939, at *6.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. See *Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **September 10, 2015** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 27, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv